UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

EDWINNA HERRERA,

    Plaintiff,

 -against-        14 Civ. 7802 (RWS)

CAROLYN W. COLVIN,       OPINION
Acting Commissioner of Social
Security,

    Defendant.

----------------------------------------X

A P P E A R A N C E S:

   **Attorney for Plaintiff**

   LAW OFFICES OF JOSEPH A. ROMANO, ESQ.
   703 Yonkers Avenue
   Yonkers, NY 10704
   By:  Joseph A. Romano, Esq.


   **Attorney for Defendant**

   U.S. Attorney's Office, SDNY
   86 Chambers Street
   New York, NY 10007
   By:  Joseph Pantoja, Esq.
     Talia Kraemer, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3 3 16

**Sweet, D.J.,**

Plaintiff Edwinna Herrera ("Herrera" or the "Plaintiff") has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56, seeking reversal the decision of the defendant, Carolyn Colvin, Acting Commissioner of Social Security ("Colvin," the "Defendant," or the "Commissioner") denying her application for disability insurance benefits. The Commissioner has cross-moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Based on the conclusions set forth below, the Plaintiff's motion is denied and the Commissioner's granted.

## Prior Proceedings

Herrera applied for disability insurance benefits on June 11, 2012, alleging that she was disabled as of May 31, 2011, due to a back impairment and carpal tunnel syndrome in her right hand. On August 30, 2012, the Commissioner denied her application. A hearing was held before Administrative Law Judge ("ALJ") Dennis G. Katz., who considered the case *de novo* and ruled on June 24, 2013 that Herrera was not entitled to benefits. The Social Security Administration Appeals Council

denied Herrera's request for review of the ALJ's decision on July 25, 2014.

Herrera initiated this action on September 26, 2014. (See Complaint, Dkt. No. 1.)  The case was dismissed on February 11, 2015, due to her failure to serve Colvin.  (Dkt. No. 4.) Herrera then completed service and moved that the case be reopened (See Dkt. Nos. 7 & 8), which the Court granted on March 24, 2015.  The Commissioner Answered the Complaint on June 8, 2015.  (Dkt. No. 19)  On July 13, 2015, the Plaintiff filed her motion for summary judgment.  (Dkt. No. 24.)  After receiving several extensions, the Commissioner filed her cross-motion for judgment on the pleadings, along with her opposition to summary judgment, on November 11, 2015.  (Dkt. Nos. 40 & 41.)  The motion and cross-motion were heard on December 9, 2015.

**The Administrative Record**

The following facts are taken from the Social Security Administrative Record (Dkt. No. 20, the "R.") and are not in dispute.

Herrera was born in 1961.  From March of 1980 until
February of 2009, she worked as a traffic agent for the City of
New York, giving out tickets for illegally parked vehicles and
driving a tow truck.  At some point in February of 2009, she
stumbled while stepping off of a sidewalk and could not break
her fall, injuring her lower back, right ankle, and right hand.[1]
After the fall, Plaintiff inquired whether she could do "light
duty," but she was told by the City that light duty was not an
option, and resigned.

After leaving work, Herrera began studying psychology at
the College of New Rochelle.  She was a full-time student, but
an accelerated program meant that she only took three hours of
class twice a week.  Herrera supported herself while studying by
participating in a work-study program.  She describes her
position as "basically the receptionist," answering the phone
and taking messages for about 20 hours per week.  Herrera left
that position because the job required too much sitting.  As she
describes it, "It was like a lot of hours and it was like I
couldn't move away from the desk, couldn't walk around.  I had
to basically just sit there, sit there, sit there.  And it was,
I just couldn't do it anymore."  When asked why she could not

---

[1] Herrera's injured right hand is her dominant hand.

return to her prior work as a traffic agent, Herrera testified
that it was "too much walking and it's just too much driving,"
which was "too much for [her] back."  At the time of the
hearing, Herrera was still attending college full time and was
due to graduate in 2014.  She planned to pursue a Master's
Degree next, and she hoped to intern in a clinical setting.

Herrera summarized her physical ability in a questionnaire
dated July 25, 2012.  She reported that she could not lift more
than five pounds, stand for more than ten minutes, and/or walk
more than two blocks before having to stop and rest.  She also
said that she could not sit comfortably, needing to constantly
move, and that she had pain in her right hand when reaching.
The questionnaire states that she had trouble paying attention
or following written instructions, and that she suffered from
stress, anxiety, depression, moodiness, and poor memory.
Herrera located her pain in her right hand, right leg, and lower
back, describing it as "numbing, stabbing, aching."

Herrera also described her daily life in the questionnaire.
Dressing was challenging, due to difficulty bending or working
buttons and zippers.  Her hands caused her difficulty when
eating, writing, or doing her hair, but she was able to function

4

within the household, cleaning, doing laundry, and cooking, sometimes with assistance. She went outside every day, and could both drive a car and use public transportation. She attended church on Sundays, although she used to go three times per week, and she would visit the park, though she no longer played handball there. She went shopping for groceries and clothing, and she could handle money.

During the hearing, the ALJ heard testimony from a vocational expert, Marian Marraco. Marraco indicated that Plaintiff's traffic agent job was a "composite" of two jobs in the SSA's Dictionary of Operational Titles: parking enforcement officer, which is unskilled work defined as light exertional level, and tow truck officer, which is semi-skilled work defined as medium exertional level. Herrera's work as a receptionist fell under the category of information clerk, which is defined as light exertional level, since some walking is involved.

The ALJ asked Marraco whether a hypothetical person of Herrera's age, education, and experience, who was restricted to light work and who could only use her dominant right hand 50% of the time for handling and fingering, would be able to find a suitable job. The VE replied that such a person could work as a

parking enforcement officer, which is classified as light work, but does require frequent handling, fingering, and reaching. Working as a tow truck operator would exceed the exertional level possible.  Herrera's counsel asked Marraco to assume, in the alternative, that she would need to take breaks on the hour, every hour, for fifteen minutes, and would be completely unable to use her right hand.  Marraco replied that no jobs would be available to Plaintiff under those circumstances.

The medical records before the Commissioner were voluminous.  In June of 2011, Herrera was evaluated by her chiropractor, Henry Hall, whom she visited regularly after her 2009 injury. Dr. Hall noted an "acute exacerbation of lumbar spine pain" and assessed Plaintiff's disability status as 50%. Dr. Hall also noted that at that point Herrera was working light duty, part time. In the summer and fall of 2011, Plaintiff visited Dr. Hall regularly. During this period, Dr. Hall noted that she had moderate palpatory pain, but that several basic activities improved with treatment, including sitting, standing, walking, sleeping, and dressing.  In reports to the Workers' Compensation Board, Dr. Hall described Herrera as having a 100% temporary impairment.

On October 3, 2011, Herrera saw Dr. Richard Memoli, an
orthopedist, at Dr. Hall's referral. On examination, Dr. Memoli
found that Plaintiff had moderate restricted range of motion of
the lumbar spine, with tenderness and muscle spasm; positive
straight leg raising at 75 degrees; mildly restricted range of
motion of the right wrist, with tenderness but no swelling; and
mildly restricted range of motion of the right ankle, with
tenderness but no swelling. Dr. Memoli noted that Plaintiff had
undergone an MRI of her lumbosacral spine, which was positive
for degenerative changes, disc bulging, and spasms. Dr. Memoli
diagnosed sprain and strain of the lumbar spine, lumbar
radiculopathy, chronic sprain of the right wrist, and chronic
sprain of the lateral ligaments of the right ankle. He placed
Plaintiff on a course of medication and advised her to continue
seeing Dr. Hall, and to begin physical therapy for her wrist.
Assessing Plaintiff's work and disability status, Dr. Memoli
noted that Plaintiff was classified by Workers' Compensation as
a moderate permanent partial disability. He stated that
Plaintiff was not currently working, but could do light duty.
On a form provided by the Worker's Compensation Board, Memoli
concluded that Herrera was suffering a 50% temporary impairment.
Herrera did begin physical therapy sessions, resulting in
moderate improvement, according to a report by the provider.

On October 11, 2011, Plaintiff saw Dr. Eli Goldner, her primary care physician, for her annual physical.  The report from the physical does not mention the fall in her medical history, and indicated that she had full range of motion in her extremities.

On June 14, 2012, Plaintiff returned to Dr. Memoli. Memoli's report on the exam indicated there was "no change on complaints/positive physical findings."  Herrera was still experiencing persistent pain in her right hand, with swelling, low back pain, and pain and swelling in her right leg and ankle. Herrera was also still experiencing limited range of motion in her back, wrist, and ankle.  He suggested that Herrera continue seeing Dr. Hall, continue physical therapy, and continue medication.  Dr. Memoli classified Herrera as having a "moderate permanent partial disability."  On June 19, 2012, Dr. Memoli completed another Workers' Compensation form, indicating that Plaintiff had a 50% temporary impairment.

On June 21, 2012, Plaintiff began another course of physical therapy for her hand. Vincent Vasile, Plaintiff's physical therapist, completed at least two undated Workers'

Compensation forms in which he stated that Plaintiff had a total disability.

On July 18, 2012, Herrera saw Dr. Ellen Ginsberg, a pain management specialist, who referred her for physical therapy and chiropractic treatment. On the same date, Dr. Ginsberg completed a Workers' Compensation form, stating that Herrera could not return to work and was totally disabled.

On August 2, 2012, Herrera was examined by Dr. Sharon Revan, as part of the Commissioner's disability determination. Plaintiff reported back pain, which she rated at 9 out of 10, and pain in her right hand, which she rated at 8 out of 10. She also stated that she had had depression for seven years, but had not seen a psychiatrist or psychologist. Revan wrote that Herrera "appeared to be in no acute distress," that she could walk on heels and toes, squat, and change her clothes without difficulty. While examining Herrera's back, Regan noted that during a straight leg raise test, Herrera experienced "low back pain to palpation." She found no abnormality on an x-ray of the lumbar spine, and that Herrera's hand and finger dexterity were intact, with a grip strength rated 4 out of 5. Revan concluded that there were "no limitations to the upper extremities for

fine and gross motor activity," but that Herrera experienced mild to moderate limitation with standing, sitting, walking, and climbing stairs due to back pain.

On August 29, 2012, a psychologist named Dr. Richard Nobel reviewed Herrera's medical record and concluded that she had a mental impairment, but not a severe one.

On April 8, 2013, Plaintiff returned to Dr. Hall after not having seen the chiropractor for six months. Dr. Hall reported that Herrera had experienced a gradual tightening of her lower back, which worsened even though she had exercised and taken medication. He described the condition as a "severe exacerbation," and noted that a large number of daily activities had worsened, including sitting, standing, walking, driving, climbing stairs, bending, lifting, and housework. Dr. Hall wrote that Plaintiff's "positional tolerance" for sitting and standing was five minutes, down from a previous baseline of 20 minutes, and that she experienced pain when raising a straight leg 25 degrees, down from a previous baseline of 50 degrees. Dr. Hall saw Herrera again a week later. At that visit, Dr. Hall noted that Plaintiff's subjective pain had improved, though palpatory pain was still severe. He also noted that many daily

activities had improved with treatment, including sitting,
standing, walking, bending, sleeping, and lifting.  Dr. Hall
again completed forms for Workers' Compensation indicating that
Herrera had a 100% impairment.

On April 22, 2013, Plaintiff again returned to Dr. Memoli,
who noted that she was still experiencing pain and restricted
range of motion in her right hand, lower back, right leg, and
right ankle.  Dr. Memoli again classified Herrera as having a
"moderate permanent partial disability" and prescribed continued
physical therapy, chiropractic treatment, and medication.  Dr.
Memoli also completed Workers' Compensation forms, again
indicating that she had a 50% temporary impairment.

## Applicable Standard

In reviewing the Commissioner's decision on an issue of
disability insurance benefits, a district court must determine
whether the decision is supported by substantial evidence.  See
42 U.S.C. § 405(g); Brown v. Apfel, 174 F.3d 59, 61-62 (2d Cir.
1999).  Substantial evidence is "more than a mere scintilla,"
Richardson v. Perales, 402 U.S. 389, 401 (1971), but rather
"such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." Brown, 174 F.3d at 62-63.
"[T]o determine whether the findings are supported by
substantial evidence, the reviewing court is required to examine
the entire record, including contradictory evidence and evidence
from which conflicting inferences can be drawn." Id. at 62
(quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983)
(per curiam)).  Substantial evidence "is still a very
deferential standard of review - even more so than the 'clearly
erroneous' standard." Brault v. Commissioner, 683 F.3d 443, 448
(2d Cir. 2012).  Under this standard, once an ALJ finds facts, a
court can reject those facts "only if a reasonable factfinder
would *have to* conclude otherwise." Id. (quoting Warren v.
Shalala, 29 F.3d 1287, 1290 (8th Cir. 1994) (emphasis in the
original).

        A court reviewing a denial of Social Security benefits does
not review de novo the evidence in the record. Pratts v.
Chater, 94 F.3d 34, 37 (2d Cir. 1996); Jones v. Sullivan, 949
F.2d 57, 59 (2d Cir. 1991).  In evaluating the evidence, "the
court may not substitute its own judgment for that of the
Secretary, even if it might justifiably have reached a different
result upon de novo review." Jones, 949 F.2d at 59 (quoting
Valente v. Secretary of Health & Human Servs., 733 F.2d 1037,

1041 (2d Cir. 1984)).  If the Commissioner's decision that a claimant is not disabled is supported by substantial evidence in the record, the court must uphold the decision, see 42 U.S.C. § 405(g); Jones, 949 F.2d at 59, even where substantial evidence may also support the plaintiff's position, see Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990), or where a reviewing court's independent conclusion based on the evidence may differ from the Commissioner's.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

While the ALJ must set forth the essential considerations with sufficient specificity to enable the reviewing court to determine whether the decision is supported by substantial evidence, he or she need not "explicitly [] reconcile every conflicting shred of medical testimony." Mongeur, 722 F.2d at 1040 (2d Cir. 1983) (citing Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981)).

**The Commissioner's Determination Was Supported by Substantial Evidence**

The Social Security Act defines "disability" as, in relevant part, "the inability to engage in any substantial

gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. §

423(d)(1)(A). The Commissioner has established a "five-step

sequential evaluation" for adjudicating disability claims, laid

out in 20 C.F.R. § 404.1520. Greek v. Colvin, 802 F.3d 370, 373

n.2 (2d Cir. 2015).

> First, the Commissioner must determine whether the
> claimant is currently engaging in substantial gainful
> activity. [20 C.F.R.] § 404.1520(b). If so, the
> claimant is not disabled. Second, if the claimant is
> not working, the Commissioner must determine whether
> the claimant has a "severe" impairment, i.e., an
> impairment that limits his ability to do physical or
> mental work-related activities. Id. §§ 404.1520(c),
> 404.1521. If not, the claimant is not disabled.
> Third, if there is a severe impairment, the
> Commissioner determines if the impairment meets or
> equals the criteria of a per se disabling impairment
> contained in Appendix 1 to 20 C.F.R. Part 404, Subpart
> P (Listings of Impairment). 20 C.F.R. §§ 404.1520(d),
> 404.1525, 404.1526. If the claimant's impairment does
> not meet or equal a listed impairment, before
> proceeding to step four, the Commissioner determines,
> based on all the relevant medical and other evidence
> of record, the claimant's "residual functional
> capacity," which is what the claimant can still do
> despite the limitations imposed by his impairment.
> Id. §§ 404.1520(a)(4), (e), 404.1545(a). Fourth, the
> Commissioner considers whether the claimant's residual
> functional capacity permits him to return to his past
> relevant work. Id. §§ 404.1520(e), (f), 404.1560(b).
> If so, the claimant is not disabled. Fifth, if the
> claimant cannot return to his past work, the
> Commissioner considers, based on the claimant's
> residual functional capacity and vocational factors,
> whether the claimant can do other work existing in

significant numbers in the national economy.  Id. §§
404.1520(g), 404.1560(b).  If so, the claimant is not
disabled.

Greek, 802 F.3d at 373 n.2.  The claimant bears the burden of
proof at the first four steps of this process, but at the fifth
step the Commissioner bears the burden of showing that there is
other work the claimant can perform.  Brault, 683 F.3d at 445.
The claimant also bears the burden of proving that he or she was
disabled for the entire period for which benefits are sought.
Greek, 802 F.3d at 374.


The ALJ's decision found in favor of Herrera on the first
two prongs of the analysis, concluding that she had not engaged
in substantial gainful activity since May 31, 2011, and that she
had three severe impairments: a back impairment, an obese
condition, and an impairment of her upper right arm and hand.
R. 12.  However, he found that her claim failed on the third
prong, since the impairments did not meet the requisite standard
of severity.  Id.  On the fourth prong, the ALJ found that
Herrera could perform her prior job as a traffic agent, but not
the aspect of it that involved driving a tow truck.  R. 16.  The
ALJ also found that Herrera could return to her prior work as a
receptionist.  Id.

In concluding that Herrera could do light work, the ALJ relied on reports by Dr. Memoli, the orthopedic specialist who treated Plaintiff on multiple occasions. In October of 2011, Dr. Memoli examined Herrera and concluded that she could work "light duty." R. 423. Dr. Memoli's opinion was supported by his examination and an MRI of Herrera's spine. R. 422-23. He found that Plaintiff had a moderately restricted range of motion in her spine, as well as tenderness and muscle spasms. Id. As to her wrist, there was mild restricted range of motion and tenderness, but no swelling. R. 423. Similarly, there was a mild restricted range of motion in her right ankle, also with tenderness but no swelling. Id. When assessing Plaintiff's "Work and Disability Status," Dr. Memoli did not identify any limitations in Plaintiff's ability to walk, stand, or sit. Id. In later evaluations of Plaintiff in June 2012 and April 2013, Dr. Memoli reached similar conclusions after subsequent examinations in June 2012 and April 2013, declaring each time that there had been "no change on complaints/positive physical findings," and that Herrera's condition was classified as a "moderate permanent partial disability." R. 419, 581.

The ALJ also relied on the report made by Dr. Revan, who performed a consultative exam on behalf of the Commissioner.

Dr. Revan found that Herrera had only "mild to moderate
limitation" on sitting, standing, or walking.  R. 449.  She also
stated that Herrera had told her that she was able to perform
daily activities, including cooking, cleaning, laundry, and
shopping.  R. 447, 449.  Dr. Revan did diagnose Herrera with
pain in her lower back, right hand, wrist, and fingers, but
Herrera's hand and finger dexterity was "intact" and her overall
prognosis was "fair."  R. 448-49.


The ALJ further supported his findings by reference to the
record of work that the Plaintiff performed.  The ALJ noted that
Herrera was able to attend class on a full-time basis, and that
she successfully worked for several months as a receptionist,
work that (combined with the effort of attending college) the
ALJ found to be "consistent with an ability to perform light
exertion level work, as understood by SSA regulations."  R. 15.
He also pointed out that, in addition to Dr. Revan's noting that
Herrera cooked and cleaned around the home, Dr. Memoli had
written that Herrera "does her chores" at home.  R. 15.
Herrera's testimony about her past and future intentions to work
also support the ALJ's finding.  At the hearing, the Plaintiff
testified that she wanted to return to light duty after her
injury in 2009, but was told no such positions existed.  R. 26.

The ALJ also noted Plaintiff's plans to pursue a Master's Degree and to intern in a clinical setting after graduating from college.  R. 30.

On these grounds, the ALJ found that Herrera would be able to stand and walk for six hours during a typical 8-hour work day, and that she would be able to frequently carry objects weighing ten points and occasionally carry objects weighing 20 pounds.  Id.  The ALJ also found that Herrera could perform manipulations with her right hand 50% of the time during a typical work day, and that she had no restriction for sedentary activities.  Id.  These determinations, supported by Herrera's activities and by the reports of Dr. Memoli and Dr. Revan, were sufficiently supported for a reasonable mind to reach the conclusion the ALJ did, and therefore the standard for substantial evidence is met.  See Brault, 683 F.3d at 447-48.

Herrera contends that the ALJ "was very arbitrarily selective in his analysis of the evidence," and "seemingly cherry picked the evidence to fit a predetermined conclusion." Pl.'s Br., Dkt. No. 25, at 7.  In support of this contention, she raises a number of objections to specific aspects of the ALJ's decision.

Herrera argues that the ALJ's conclusion that her injury remained almost unchanged throughout the relevant period was incorrect because the injury to her right ankle arose over time, at some point between 2009 and 2011. However, Dr. Memoli's report, on which the ALJ relied, noted that Plaintiff's right ankle had been injured in the original fall, R. 422, and Plaintiff complained of right foot pain to Dr. Goldner in February 2010. R. 493. Moreover, Plaintiff testified at the hearing that she had only "a little" problem with her right ankle. Herrera also argues that wrist sprain and lumbosacral radiculitis developed later because they were not present in earlier radiology reports, but the radiology report conducted in September 2009 did not address her wrist, and it did find abnormalities in her lumbar spine. R. 431-38.

The Plaintiff argues that the ALJ wrongly discounted Dr. Memoli's opinion that Plaintiff had a disability, but that opinion was qualified, concluding that Herrera had a "moderate permanent partial disability," rather than a complete one. See R. 423. The ALJ expressly considered Dr. Memoli's opinion and relied on it in reaching his finding. Moreover, a doctor's

opinion that a claimant is disabled is not determinative because
the question of disability is reserved to the Commissioner.
Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999).  Further, Dr.
Memoli took his standard for disability from the Workers'
Compensation Board, R. 423, which is a different standard from
the one used by the Commissioner.  Herrera also asserts that the
ALJ discounted Dr. Memoli's opinion about Plaintiff's back
condition, including Dr. Memoli's findings that Plaintiff had a
restricted range of motion in her lumbar spine.  However, the
ALJ expressly referred to these findings in his analysis.  R.
15.


    Herrera also attacks the ALJ's finding that she could sit
for six hours during an eight-hour workday, a finding that is
relevant to his determination that she could perform work as an
information clerk.  The finding is adequately supported by the
doctor's reports, in particular Dr. Revan's finding that Herrera
suffered only "[m]ild to moderate limitation with standing,
sitting, and walking."  R. 449.  The finding is also supported
by Herrera's ability to work as a receptionist for 20 hours per
week and by her attending college, which required her to sit for
three hours of class twice per week.  The ALJ's finding that
Herrera is capable of sitting fir six hours of an eight hour

work day does not mean that she must "sit without moving for six hours, trapped like a seat-belted passenger in the center seat on a transcontinental flight," but rather contemplates time to take breaks, stand up, and walk around during work hours.  See Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004).  On a few occasions, Plaintiff's chiropractor, Dr. Hall, found that Plaintiff's ability to sit was more limited.  However, a chiropractor's opinion is not a medical opinion and is not entitled to the same sort of special weight as that of a physician. See Diaz v. Shalala, 59 F.3d 307, 313-14.  Though the ALJ did not expressly acknowledge Dr. Hall's findings in his written opinion, an ALJ is not required to discuss every piece of evidence, and a failure to cite a specific piece evidence does not indicate that the evidence was not considered.  Brault, 683 F.3d at 448.

Herrera also contends that the ALJ failed to take her depression into account in concluding that she was not disabled. In fact, the ALJ reasonably concluded at step two of the five-step process that Plaintiff did not suffer from a severe mental impairment — that is, an impairment that "significantly limits [the claimant's] . . . mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).  Herrera herself never

alleged that depression or any other mental impairment was the
basis of her disability.  In her June 2012 application for
benefits, which post-dated her diagnosis with depression, she
identified her back and right hand problems as the only
conditions limiting her ability to work.  R. 131.  She also
reported that she was not receiving treatment for any mental
condition and had no such treatment scheduled.  R. 134.
Similarly, Herrera did not argue at the hearing that depression
was a basis she was putting forward for a finding of disability.

There is also record support for the ALJ's finding, in
particular Dr. Revan noting that Herrera had depression, but did
not see a psychologist and was helped by medication, R. 446;
Herrera's statements in the 2012 questionnaire that stress
causes her anxiety, depression, and moodiness, but that she
still nonetheless had many successful social interactions; and
the opinion of the state psychologist, Richard Nobel, who
reviewed the record and found no severe impairment.  R. 507.
Herrera suggests that the ALJ had a duty to further develop the
record because she obliquely referenced a therapist at the
hearing, but in this case, with a complete medical history and
no obvious gaps in the record, the ALJ was not required to seek
further information before reaching a determination on

disability.  See Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir.
1999); see also R. 23 (Herrera's attorney acknowledging the
record was complete).[2]


To be sure, just as there is substantial evidence
supporting the ALJ's decision, there is also substantial
evidence that could have supported a finding for Herrera.  A
factfinder could have credited Dr. Hall's reports above those of
Dr. Memoli, for instance, or Dr. Ginsberg's report above Dr.
Revan's.  The standard of review does not permit a district
court to engage in this sort of second-guessing, however.  "The
Court must uphold the Commissioner's decision upon a finding of
substantial evidence, even when contrary evidence exists."
Butler v. Commissioner, No. 12 Civ. 9179, 2013 WL 6053497, at *5
(S.D.N.Y. Nov. 8, 2013); see Alston, 904 F.2d at 126 ("Where
there is substantial evidence to support either position, the
determination is one to be made by the factfinder.").  The

---

[2] This considerable record support, along with Herrera's failure to press the
issue of a mental disability and the acknowledgement that the record was
complete, indicates that the Commissioner's admitted error in failing to
follow the "special technique" for assessing mental impairments was harmless.
See Arguinzoni v. Astrue, No. 08 Civ. 6356, 2009 WL 1765252, at *8-9
(W.D.N.Y. June 22, 2009); see also Oakes v. Astrue, No. 06 Civ. 332, 2009 WL
10212506, at *3-4 (W.D.N.Y. June 30, 2009) (finding harmless error where ALJ
relied on a report by Richard Nobel, the psychologist who reviewed Herrera's
record, and that report found no limitation based on the "special technique"
criteria, which the report in this case considers at R. 517).

Commissioner's decision is supported by substantial evidence, and therefore upheld.

## Conclusion

For the reasons stated above, the Plaintiff's motion for summary judgment is denied and the Commissioner's motion for judgment on the pleadings is granted.

It is so ordered.

New York, NY
March 3/, 2016

**ROBERT W. SWEET**
**U.S.D.J.**